# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### JUNE SESSION, 1999



**FILED**

**August 9, 1999**

Cecil Crowson, Jr.
**Appellate Court Clerk**

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | C.C.A. NO. 02C01-9808-CC-00253 |
| | ) | |
| Appellee, | ) | |
| | ) | **LAUDERDALE COUNTY** |
| **V.** | ) | |
| | ) | |
| | ) | **HON. JOSEPH H. WALKER, JUDGE** |
| **BAWANA M. CARTER,** | ) | |
| | ) | |
| Appellant. | ) | **(FIRST DEGREE MURDER)** |

FOR THE APPELLANT:                    FOR THE APPELLEE:

**GARY F. ANTRICAN**                    **PAUL G. SUMMERS**
District Public Defender                Attorney General & Reporter

**JULIE K. PILLOW**                    **R. STEPHEN JOBE**
Assistant Public Defender            Assistant Attorney General
P.O. Box 700                        2nd Floor, Cordell Hull Building
Somerville, TN  38068                425 Fifth Avenue North
(At Trial)                            Nashville, TN  37243

**C. MICHAEL ROBBINS**                **ELIZABETH T. RICE**
46 North Third Street, Suite 719        District Attorney General
Memphis, TN  38103
(On Appeal)                        **MARK E. DAVIDSON**
                                    Assistant District Attorney General

                                    **JAMES WALTER FREELAND, JR.**
                                    Assistant District Attorney General
                                    302 Market Street
                                    Somerville, TN  38068

OPINION FILED _____

AFFIRMED

THOMAS T. WOODALL, JUDGE

# OPINION

The Defendant, Bawana M. Carter, a.k.a. Michael Carter, appeals as of right his convictions for one count of first degree murder and two counts of attempted first degree murder in the Lauderdale County Circuit Court. The trial court sentenced Defendant to life imprisonment for the first degree murder conviction and nineteen years for each attempted first degree murder conviction. The two nineteen year terms were ordered to run concurrently with each other but consecutively to the life sentence. In this appeal, Defendant raises the following two (2) issues:

> I. Did the trial court err in admitting Defendant's statement to police without redacting a reference to a previously suppressed statement between Defendant and police officers; and

> II. Did the trial court err in allowing the jury to read a transcript of the Defendant's taped statement as the tape was being played?

After a careful review of the record, we affirm the judgment of the trial court.

Defendant, along with two codefendants, was indicted in February 1997, on charges of first degree premeditated murder and two counts of attempted first degree murder. They were initially tried before a jury in May 1997, but a mistrial was declared because the jury was unable to reach a verdict. Following the first trial, Defendant gave two statements to police, the first of which was subsequently suppressed by the trial court. As a result of these statements, the State moved to sever Defendant's trial from that of his codefendants. In February 1998, Defendant was again tried before a jury and the jury found him guilty as charged.

Although the sufficiency of the evidence is not challenged in this appeal, we will nevertheless offer a brief recitation of the facts. Durell West testified that on the

evening of January 18, 1997, he was driving his twin brother Lavell West and Quincy Colvin around in his car. Durell West testified that the three of them were going out, but stopped by Lavell West's residence to allow him to change clothes. As he and Colvin waited in the car for Lavell West to change clothes, Durell West observed three vehicles which were not normally seen in the neighborhood. He recognized the three vehicles as a burgundy Buick belonging to Bob Spivey, a green Oldsmobile 98 also belonging to Bob Spivey, and a grey Bonneville belonging to Danny O'Neal Thompson. He knew these two individuals from school.

After Lavell West returned to the car, the three of them drove away. As they stopped at the intersection of Ross Road and Highway 91, the three cars seen earlier, "boxed" their vehicle in. Thompson's grey Bonneville was to their left, Spivey's's burgundy Buick was to their right, and Spivey's green Oldsmobile was behind them, with its lights shining into their vehicle. Durell saw four individuals in the Bonneville, one of whom was Defendant who was seated in the rear passenger seat. Durell West then saw gunshots coming from the Bonneville. Both he and Quincy Colvin were hit by gunshots, which prompted West to duck down and speed away from the scene. The Bonneville pursued them, with gunshots still being fired. Quincy Colvin died as a result of gunshot wounds and Durell West suffered gunshot wounds as well.

Durell testified that he and his brother had previously had a conflict with Defendant. Durell West personally had a confrontation with Defendant only days prior to the shooting.

Lavell West reiterated Durell West's testimony regarding the events leading up to the confrontation at the stop sign. Lavell West also observed Defendant in the rear passenger seat of the Bonneville. Upon seeing gunfire coming from the Bonneville, Lavell West ducked down and did not observe anything further. Lavell West echoed the testimony concerning previous problems that they had encountered with Defendant.

Steven Burnett, also in the Bonneville on the night of the shooting, testified that he observed Defendant attempting to load a long gun in the back seat of the car before handing it to a person known as "Body Rock" in the front seat of the car. The State also offered the testimony of Cecil Louis Crowder, Sr., a resident of the area of the shooting, who stated that he heard several rapid gunshots and then saw two cars speeding down the highway.

Police investigation revealed the presence of eight spent cartridge casings at the scene. The cartridge casings were of the 7.62 x 39 millimeter variety, typically used in SKS or AKA assault-type rifles. Forensic testing indicated that the cartridge casings were all fired from the same weapon, and they were consistent with bullet fragments recovered from the injured shoulder of Durell West.

The State offered a statement given by Defendant to police on June 26, 1997. The statement was made in the presence of Defendant's attorney. The statement was tape-recorded and it was played for the jury. The jury was also furnished with a transcript of the statement as they listened to the audiotape. The officers who were present during the interview confirmed at trial that the transcript accurately reflected what had been said during the statement. In the statement, Defendant

confirmed his presence in the Bonneville during the shooting. He also admitted to having been the one who loaded the weapon used. He stated that another individual in the car actually shot the weapon, and that he had no idea of what was going to occur.

I. Redaction

In his first issue on appeal, Defendant argues that the trial court erred in failing to redact a portion of his second statement to police that contained a reference to a previous statement he had made which had been suppressed by the trial court. He contends that the offending portion of the statement improperly served to implicate him in the charged offense.

After Defendant's first trial ended in a mistrial, Defendant gave a statement to police on June 19, 1997. Defendant gave a second statement to police a week later, on June 26, 1997. Prior to his second trial, Defendant filed a motion to suppress both statements. The trial court granted Defendant's motion with regard to the first statement given on June 19, 1997, on the basis that it violated the principle set forth in Minnick v. Mississippi, 498 U.S. 146, 153, 111 S. Ct. 486, 491, 112 L. Ed. 2d 489 (1990) (when counsel is requested by the accused, interrogation must cease, and officials may not reinitiate interrogation without counsel present, whether or not the accused has consulted with his attorney). The trial court ruled that the second statement was voluntary and admissible at trial. The portion of the second statement Defendant contests reads as follows:

> [Sheriff Rickard to Defendant]: Let me say that, when you and I talked the other day, you did inform me that, that indeed, you were in the car that pulled alongside the

West's boys car where Quincy Colvin was shot. You informed me that you were in the right rear, Danny Thompson was driving his vehicle, and there was two other people in the car. One was nick named [sic] Body Rock, who actually done the shooting from the right front and there was another party in the right - left rear that you would not identify until we talked to your attorney, is that true?

[Defendant]: Yea.

We find that it was not error for the trial court to refuse to redact the above challenged portion of the statement. The claimed erroneous information is contained within a challenged statement that was ruled by the trial court to be admissible. Defendant adopted the challenged portion, in the presence of his attorney, during the non-suppressed statement by answering "yea" to the officer's summary. Furthermore, we find that the challenged portion does not state anything that is not included in the unchallenged remainder of the statement. Defendant unequivocally states in the remainder of the statement that he was in the car on the evening of the shooting, he describes in detail the events leading up to the shooting, he identifies cars and other persons, and he states that although he loaded the gun, "Body Rock" was indeed the person who fired the gun. Therefore, we hold that it was not error to deny the Defendant's motion to redact. However, even if it was error, clearly any error in its admission was harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). This issue is without merit.

## II.  Audio Tape and Transcript

In his second issue, Defendant argues that the trial court erred in allowing the jury to read a transcript of his statement to the police while the actual tape of the

statement was being played. He contends that the transcript is not a reliable reflection of what transpired on the tape recording itself. Accordingly, he asserts that the jury should not have been permitted to refer to the transcript, but rather should have been permitted only to listen to the tape recording.

The jury in this case was permitted to view a transcript of Defendant's taped statement as they listened to the tape being played. Officer Mike Kirkpatrick, who was present during the interview with Defendant, testified that the transcript accurately reflected what transpired during the interview. Specifically, Officer Kirkpatrick testified as follows: [T]o the best of my knowledge this is basically almost word for word what was said in the interview between myself, Sheriff Rickard, Ms. Pillow, [and] Defendant. Ronnie Rickard, Lauderdale County Sheriff, who was also present during the interview with Defendant, testified that he had reviewed "most" of the transcript and he also confirmed that the transcript was an accurate reflection of what transpired during the interview.

It is well-settled law that tape recordings and compared transcripts are admissible and may be presented into evidence by any witness who monitored the conversations if he or she was in a position to identify the declarant with certainly. See State v. Coker, 746 S.W.2d 167, 172 (Tenn. 1987) (citation omitted). Therefore, we find that the transcript was properly authenticated by both Officer Kirkpatrick and Sheriff Rickard.

After being properly authenticated, a trial judge should offer a cautionary instruction to the jury instructing the jurors that the transcript is merely to aid them in consideration of the evidence of the recording itself. See State v. Mosher, 755

S.W.2d 464, 469 (Tenn. Crim. App. 1988); State v. Smith, 656 S.W.2d 882, 888 (Tenn. Crim. App. 1983). The jury instruction in regard to the transcript in the case sub judice was as follows:

> [T]he [c]ourt has ruled that if the State desires to play what they purport to be a tape recording of conversation or conversations, that they can pass to you what the State alleges to be a transcript of that recording. However, it's for you to determine the accuracy of the recording itself and whether or not the transcription is accurate; that is, if you find something to be said on the tape that is not correctly reflected on the transcription, then you are to use your judgment with regard to the accuracy.

The instruction, in our view, does not place the proper emphasis on the content of the tape rather than the content of the transcription. The judge should have emphasized to the jury that if they found discrepancies with the transcript and the tape, that the tape, not the transcript, is the actual evidence to consider. See, e.g., Mosher, 755 S.W.2d at 469; Smith, 656 S.W.2d at 888. However, we find in this case that any error in not being more specific in the jury instruction was harmless. See Tenn. R. App. P. 36(b); Tenn. R. Crim. P. 52(a). This issue is without merit.

Based on all the foregoing, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, Judge

CONCUR:

_____
DAVID H. WELLES, Judge

-8-

_____

NORMA McGEE OGLE, Judge